IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIDGETOWER OPCO, LLC d/b/a BEST COMPANIES GROUP, | : | Civil No. 1:21-CV-01869 |
| Plaintiff, | : | |
| v. | : | |
| MEGAN BURNS, | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This case involves allegations of trade secret misappropriation brought under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and the Pennsylvania Trade Secrets Act, 12 Pa. Con. Stat. §§ 5301–5308 ("PUTSA"), with related state-law claims for breach of contract and conversion.  Plaintiff BridgeTower OpCo, LLC ("BridgeTower") d/b/a Best Companies Group ("BCG") asserts that Defendant Megan Burns ("Burns") worked with her former supervisor at BridgeTower, Peter Burke ("Burke"), to steal and then use BridgeTower's trade secrets to open and operate a competing company, Workforce Research Group, LLC ("WRG"), in violation of state and federal law as well as Burns' non-compete and confidentiality agreement.

Before the court is Burns' motion to dismiss, which seeks to dismiss the complaint for failure to state a claim upon which relief can be granted.  (Doc. 19.)  For the reasons set forth below, Burns' motion to dismiss will be denied.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

BridgeTower claims that Burke stole BCG's confidential trade secrets and materials to create his own competing business while he still worked for BridgeTower. (Doc. 1, ¶ 19.) BridgeTower also alleges that Burke then formed WRG, a competing business, and terminated his employment with BridgeTower. (*Id.* ¶¶ 19–20.) Prior to Burke leaving, BridgeTower asserts that he backed up all of the documents on his company laptop to a personal hard drive that contained almost all of BridgeTower's confidential documents, which he has been using in his new business. (*Id.* ¶ 22.)

Burns terminated her employment with BridgeTower and began working for WRG as well. (*Id.* ¶ 29.) BridgeTower contends that: (1) WRG has begun offering nearly identical programs to those offered by BCG by copying and using BCG's materials; (2) WRG has sent proposals to BCG's business partners that are almost indistinguishable from BCG's materials; (3) WRG has used or replicated many of BCG's proprietary templates, documents, and data to gain an unfair competitive advantage; (4) Burns had knowledge of this ongoing misappropriation; and (5) Burns has willingly participated in the use of BCG's documents for WRG. (*Id.* ¶¶ 24–26.) BridgeTower further asserts that it assumed a non-compete and confidentiality agreement Burns signed with a predecessor company, Journal

Multimedia, when it acquired Journal Multimedia, and that Burns working for a competing business violates her agreement. (*Id.* ¶¶ 11–13, 29–32.)

BridgeTower initiated this action by filing a complaint on November 2, 2021, alleging that Burns and Burke stole confidential information and trade secrets from BCG and were using that information at WRG to unlawfully compete with BCG in violation of Burns' non-compete and confidentiality agreement.[1] (Doc. 1, ¶¶ 1–2.) On November 9, 2021, Burns filed the instant motion to dismiss. (Doc. 19.) Burns filed a brief in support on November 23, 2021. (Doc. 37.) BridgeTower timely filed a brief in opposition on December 14, 2021. (Doc. 40.) Burns filed a reply brief on January 4, 2022. (Doc. 42.) Thus, this motion is ripe for review.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. In addition, this court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendant and Plaintiff asserts that the amount in controversy exceeds $75,000. The court has supplemental jurisdiction over the

---

[1] BridgeTower filed suit against Burke, Burns, and WRG in the Southern District of Texas on September 15, 2021. (Doc. 1, ¶ 33.) Burns objected to venue being in Texas because of venue provisions in her non-compete agreement, so the parties agreed that she would be dismissed from the Texas action and that the instant action would be filed against her in this court. (*Id.*)

related state-law claims pursuant to 28 U.S.C. § 1367. Further, venue is appropriate under 28 U.S.C. § 1391.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly

authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### DISCUSSION

**A. Misappropriation of Trade Secrets**

Burns argues that BridgeTower has failed to state a claim upon which relief could be granted under both the DTSA and PUTSA. (Doc. 37, pp. 12–16.)[2] In doing so, Burns first asserts that argues that BridgeTower has failed to establish that any of the information at issue constitutes a trade secret. (*Id.* at 13–14.) On

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

this score, Burns asserts that BridgeTower has done nothing more in its complaint than provide conclusory allegations and recitations of the necessary elements, without any supporting facts. (*Id.* at 14.) Burns then argues that even if the information at issue constitutes trade secrets as defined by the DTSA and/or PUTSA, BridgeTower failed to establish that Burns misappropriated any of this information. The court disagrees.

The complaint contains the following allegations, which BridgeTower asserts in support of its claims for misappropriation of trade secrets: [3]

> 3. By using stolen trade secrets and copycat program materials from BCG, Burke and Burns conspired together to misrepresent the nature of their new business by marketing their services as a continuation of BCG's programs. For example, Burns has used stolen data and pricing from BCG to market WRG's copycat programs.
>
> 16. BridgeTower has expended significant time, money, and effort in developing and maintaining its confidential and proprietary business information, including its survey data, tools, materials, methods and processes, which has been critical to BCG's success and growth. Importantly, all of BCG's survey tools, reports, and assessment methodologies, which are used in the "Best Places to Work" programs, are the sole and exclusive property of BridgeTower. Further, all data collected through these programs involve processes that are the sole and exclusive property of BridgeTower.
>
> 17. The customer agreements used by Burke in his position at BridgeTower specifically provided that "all survey tools, reports and assessment methodologies used in the "Best Places to Work" program

---

[3] The court notes that on a motion to dismiss, consideration of testimony or evidence from the preliminary injunction hearing is not appropriate. *See Jordan*, 20 F.3d at 1261. Therefore, any references in the parties' arguments to evidence or testimony from the hearing has not been considered in resolving the instant motion to dismiss.

are the sole and exclusive property of Best Companies Group." The terms and conditions of the programs were also agreed by customers to be kept confidential and not given to any other party absent agreement from BCG.

18. BridgeTower's success and ability to compete in the marketplace hinges on this confidential and trade secret information. Accordingly, BridgeTower has taken reasonable measures to ensure the secrecy of this information, and BridgeTower's confidential and proprietary business information is not in the public domain.

24. Since its formation, WRG has unfairly profited off of BridgeTower by offering nearly identical programs to BCG and by blatantly copying and using BridgeTower's confidential and trade secret information for its own benefit.

25. For example, WRG has sent proposals to BridgeTower's business partners that are almost indistinguishable from BridgeTower's own materials.

26. Likewise, WRG has used or replicated many of Plaintiff's proprietary templates, documents, and data in an attempt to gain an unfair competitive advantage by undercutting Plaintiff's business operations and confusing business partners as to whether WRG is related to BridgeTower. Burns has knowledge of this ongoing misappropriation and has willingly participated in the use of BCG's documents for WRG's purposes.

27. For example, on or around August 23, 2021, at Burns' request, Burke sent Burns the previous five years' worth of BCG's winner lists for "Best Places to Work in Kentucky" for Burns to use in connection with soliciting work for WRG. Burn's [sic] casual request for "past KY winner lists" makes clear that she knew Burke had such information in his possession, and that it was commonplace for the two of them to use such misappropriated trade secrets at WRG.

28. The similarity in WRG's materials and services has caused confusion in the marketplace and prompted questions from customers about the similarity of its proposal to the program offered by BridgeTower.

7

39. As described above, Defendant took and used certain confidential information from BridgeTower, including, but not limited to BridgeTower's customer information, marketing information, methods, templates, and processes. This confidential information is protected as trade secrets under the Defendant Trade Secrets Act, 18 U.S.C. § 1836.

40. These trade secrets are of substantial value to BridgeTower, and Plaintiff has invested substantial time, effort, money and resources in developing its trade secrets and confidential information.

41. BridgeTower has taken reasonable measures to maintain the secrecy of the information and these trade secrets and confidential information are not matters of public knowledge or generally known within the industry.

42. Such trade secrets derive independent economic value from not being generally known to, are readily ascertainable by proper means, by other persons or entities who could obtain economic value from their use.

43. Defendant used BridgeTower's trade secrets without BridgeTower's consent.

44. As a direct and proximate result of Defendant's conduct, BridgeTower has suffered, and will continue to suffer, damages in an amount to be determined at trial.

45. Defendant has used and will continue to use these trade secrets to compete unfairly with BridgeTower, and/or be unjustly enriched, unless restrained by this Court.

55. Plaintiff communicated its trade secrets and confidential information to Defendant in confidence and Defendant has intentionally and unlawfully taken property, including physical files and electronic documents, which belong to Plaintiff.

(Doc. 1, ¶¶ 3, 16–18, 24–28, 39–45, 55; *see also* Doc. 40, pp. 9–10.)

Under the DTSA, a trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" when the owner of that information "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Under the PUTSA, a trade secret is defined as "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process" when that information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 12 PA. CON. STAT. § 5302.

The DTSA defines "misappropriation" as "the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "the disclosure or use" of a trade secret without the consent of the owner. 18 U.S.C. §§ 1839(5)(A)–(B). The PUTSA similarly defines misappropriation as improper "disclosure or use" without consent. 12 PA. CON. STAT. § 5302.

Viewing the allegations in the complaint in the light most favorable to BridgeTower and making all reasonable inferences in BridgeTower's favor, as required by the standard of review, the court finds that it has stated a facially plausible claim against Burns under both the DTSA and PUTSA for trade secret misappropriation. BridgeTower has alleged that Burns had access to survey data, survey tools, reports, materials, assessment methodologies and processes, which BridgeTower asserted were not available in the public domain, and that it has taken steps to keep secret. Further, BridgeTower alleged that Burns and Burke used this information, through WRG, to offer almost identical programs and services to BridgeTower's customers, causing confusion in the market. (*See* Doc. 10.)[4] Lastly, BridgeTower alleged that Burns took and used certain confidential information from BridgeTower, had knowledge of ongoing misappropriation of BridgeTower's confidential information at BCG, and used this information without BridgeTower's consent. Thus, BridgeTower has alleged sufficient factual allegations against Burns to survive the instant motion to dismiss.

### B. Conversion

Next, Burns argues that BridgeTower's conversion claim should be dismissed because PUTSA preempts tort law claims that are limited to the misuse

---

[4] These exhibits were not attached to the complaint, but were relied upon in the complaint, and are therefore appropriate for consideration of a motion to dismiss. (See Doc. 1, ¶¶ 24–25, 28.)

10

of trade secrets.  (Doc. 37, p. 17–18.)  Alternatively, Burns argues that if the conversion claim is not preempted, that BridgeTower has failed to state a claim for conversion.  (*Id.* at 18–19.)  BridgeTower, in response, argues that it has successfully stated a claim for conversion and that it is premature to determine whether PUTSA preempts this tort claim, because if the information at issue is found to not constitute a trade secret, Burns could still be liable for conversion of that confidential information.  (Doc. 40, pp. 21–23.)

Pennsylvania recognizes that claims for conversion may be founded on confidential business information, including trade secrets: "[o]ne who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information."  *Houser v. Feldman*, No. 21-CV-0676, 2022 U.S. Dist. LEXIS 770963, at *28 (E.D. Pa. Apr. 28, 2022) (quoting *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

In addition to the allegations in the complaint set forth above, BridgeTower also alleges in its complaint that "[Burns] has failed to return and cease use of and/or refused [BridgeTower's] demands to return and cease use of the trade secrets and other BridgeTower confidential information and property that she illegally took from BridgeTower" and that Burns "has intentionally and unlawfully taken property, including physical files and electronic documents, which belong

11

to" BridgeTower. (Doc. 1, ¶¶ 51, 58.) Thus, at this stage, the court finds that BridgeTower has sufficiently stated a plausible claim for conversion of confidential business information, which includes material that Plaintiff claims to constitute trade secrets.

Burns is correct that a claim for conversion of trade secrets is preempted by the PUTSA. However, it has not yet been determined whether the information that Plaintiff alleges to constitute trade secrets does, in fact, constitute trade secrets as defined by PUTSA. "[B]ecause it cannot be established at this juncture [the motion to dismiss stage] whether the confidential information at issue in this case is a trade secret, the Court cannot find that [Plaintiff's] claims are preempted [by the UTSA]." *Roger Dubois N. Am., Inc. v. Thomas*, No. 3:05-CV-2566, 2006 U.S. Dist. LEXIS 65674, at *10 (M. D. Pa. Sep. 14, 2006) (quoting *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co*, 191 F. Supp. 2d 652, 659 (E. D. Va. 2002)). Additionally, the conversion claim in the complaint makes it clear that the information at issue is not restricted to that which can be defined as a trade secret, as it alleges conversion of "trade secrets, confidential information, and other BridgeTower property." (*See* Doc. 1, ¶¶ 50–51.) Therefore, the entire conversion claim may not be preempted by the PUTSA. In any event, it is premature to dismiss the conversion claim based on possible preemption of the claim or part of the claim where no finding has been made at this stage that any of the information

at issue is actually a trade secret. Therefore, Burns' motion to dismiss the conversion claim will be denied.

### C. Breach of Contract

Finally, the court will address Burns' motion to dismiss the breach of contract claim on the basis that BridgeTower has neither demonstrated the validity of the contract nor a legitimate, protectable business interest it is seeking to protect through the non-compete clause in Burns' employment agreement. (Doc. 37, pp. 20–23.) In response, BridgeTower first argues that it has properly plead that the contract was made and assumed and that Burns' arguments are a question of proof, not pleading. (Doc. 40, p. 24.) Next, BridgeTower argues that recognized, protected interests for purposes of enforcing restrictive covenants include trade secrets and confidential information, both of which were plead. (*Id.* at 24–26.)

In the complaint, BridgeTower alleged that "[a]s a successor of Journal Multimedia Corp dba Best Companies Group, BridgeTower assumed the Agreement (Exhibit A) when it acquired the Company." (Doc. 1, ¶ 13.) The court notes that whether or not BridgeTower assumed Burns' employment agreement through its acquisition is a mixed question of law and fact. However, the complaint asserts that BridgeTower was a successor of Journal MultiMedia Corp and it assumed Burns' employment agreement through an acquisition. Thus, this is not, as Burns suggests, a situation in which there is a mere conclusory allegation.

The allegation that BridgeTower assumed Burns' contract is supported by a factual allegation (that the assumption occurred as part of an acquisition).  At the motion to dismiss stage, this factual allegation is sufficient to facially plead that there was a valid, enforceable contract at issue.[5]

As to the validity of the non-compete provision itself, Burns' arguments seem to again be aimed at whether the information at issue constitutes a trade secret, giving BridgeTower a legitimate, protectable business interest.  The existence of trade secrets analysis was already conducted in the context of BridgeTower's misappropriation of trade secrets claims.  Given that BridgeTower has adequately plead the existence of confidential information and trade secrets, the court finds that BridgeTower has a legitimate, protectable business interest it is seeking to protect through the non-compete agreement.  Therefore, Burns' motion to dismiss the breach of contract claim will likewise be denied.

---

[5] The court again notes that it has not relied on any evidence or testimony from the preliminary injunction hearing held on November 12, 2021 in ruling on the instant motion to dismiss.  Thus, BridgeTower's failure, at that hearing, to *prove* the validity of the contract, is not relevant to the analysis the court is undertaking today, which is determining whether BridgeTower has sufficiently *plead* the validity of the contract.

## CONCLUSION

For the foregoing reasons, the court will deny Burns' motion to dismiss. (Doc. 19.) An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 18, 2022